**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| REPUBLICAN PARTY OF NEW MEXICO,    **)** | |
| EDWARD F. WOLEK, and JEROME WEBER, **)** | |
| **)** | |
| Plaintiffs,    **)** | **CIVIL ACTION** |
| **)** | |
| v.                                **)** | No. 06-0834-MLB |
| **)** | |
| MARY HERRERA, as County Clerk for  **)** | |
| the County of Bernalillo, State of **)** | |
| New Mexico, and SALLY G. PADILLA,  **)** | |
| as County Clerk for the County of  **)** | |
| Sandoval, New Mexico, the BOARD OF **)** | |
| COUNTY COMMISSIONERS OF            **)** | |
| BERNALILLO COUNTY, NEW MEXICO and  **)** | |
| the BOARD OF COUNTY COMMISSIONERS  **)** | |
| OF SANDOVAL COUNTY, NEW MEXICO,    **)** | |
| **)** | |
| Defendants.    **)** | |
| **)** | |

**MEMORANDUM AND ORDER**

This case comes before the court on motions to dismiss filed by defendants Herrera and Padilla (the County Clerks).[1]  (Docs. 8, 10.) The County Clerks have adopted each other's motions and briefs in relevant part.  (Docs. 11 at 11; 16.)  The motions have been fully briefed and are ripe for decision.  (Docs. 9, 11, 18, 19.)  The County Clerks' motions are DENIED for reasons set forth herein.

**I.   INTRODUCTION**

Plaintiff Republican Party of New Mexico (Republican Party) brought this action alleging that the County Clerks, who are the clerks for two New Mexico counties, established early voting sites in locations that unfairly burden the voting rights of Republican voters

---

[1] After being transferred among several judges in the District of New Mexico, (Docs. 2, 3, 4, 5, 13), this case was assigned to the undersigned judge for the District of Kansas.  (Doc. 12.)

in the respective counties in such a way as to violate the Equal Protection Clause of the Fourteenth Amendment. More specifically, the Republican Party alleged that the County Clerks placed the early voting sites in heavily Democratic areas of their respective counties. Consequently, the Republican Party alleged that these actions "have the effect of unduly burdening and/or precluding members of the Republican Party from participating in the early voting stages of the election process." (Am. Compl. at 3-4.) Proceeding under Title 42 of the United States Code section 1983, the Republican Party asked the court to remedy the alleged equal protection violation by enjoining the County Clerks to establish their counties' early voting sites "in a politically neutral manner." Id. at 7.

The County Clerks responded with motions to dismiss. (Docs. 8, 10.) Having adopted the relevant portions of one another's motions, the consolidated theories under which the County Clerks argue that the case should be dismissed are: 1) the Republican Party lacks standing to bring the claim; 2) the Republican Party has failed to join necessary and indispensable parties; 3) the Republican Party failed to exhaust available remedies under state law; and 4) the Republican Party's claim is barred by the relevant statute of limitations.

After the County Clerks filed their motions to dismiss, the Republican Party attempted to remedy some of the deficiencies raised therein by filing an unopposed motion for leave to file an amended complaint. That motion is GRANTED, and the court will decide the motions to dismiss based on the amended complaint.

In the amended complaint, the Republican Party is joined by two new plaintiffs. These individuals are purportedly residents of

-2-

Sandoval and Bernalillo Counties, and their addition as plaintiffs is apparently aimed at addressing some of the standing issues raised by the County Clerks.  Additionally, the Boards of County Commissioners of Sandoval and Bernalillo Counties have been added as defendants in response to some of the County Clerks' arguments under Federal Rule of Civil Procedure 19.  Despite the addition of these new parties, the court finds that the matters raised in the County Clerks' motions to dismiss can be resolved without additional briefing or participation by the individual plaintiffs of the boards of county commissioners. The court will address in turn each theory advanced by the County Clerks.

## II. ANALYSIS

### A.  STANDING

The original complaint in this action named as plaintiff only the Republican Party.  Defendant Herrera's motion to dismiss asserted that the Republican Party lacks standing and thus the court lacks jurisdiction to hear the complaint.  (Doc. 9 at 2.)  Plaintiffs' response to the County Clerks' motions to dismiss does not address this contention.  In the amended complaint filed October 6, 2006, additional plaintiffs Edward F. Wolek and Jerome Weber, both individual members of the Republican Party, were added.  Presumably to assuage the concerns raised by Herrera, plaintiffs' amended complaint alleges: 1) Edward Wolek and Jerome Weber are registered Republicans living in Bernalillo and Sandoval counties, respectively; 2) both Wolek and Weber live in primarily Republican legislative districts in their respective counties which are not "reasonably proximate to an early voting location"; 3) as a result of defendants'

early voting location plans, "members of the Republican Party, including but not limited to plaintiffs Wolek and Weber, will have less opportunity or greater difficulty than members of the Democratic Party to vote early in the upcoming election"; 4) individual members of the Republican Party would have standing to sue in their own right; 5) the interests the Republican Party seeks to protect are "germane to the organization's purpose"; and 6) "[n]either the claims asserted nor the relief requested herein require the participation of individual members."

The party bringing a suit must establish standing in order to prosecute an action in federal court. Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 11 (2004); Wardin v. Seldin, 422 U.S. 490, 498 (1975).  Standing is determined "as of the time the action is brought." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (2000).  Because the standing requirements are "not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Id. (internal citations and quotations omitted).

An association, even absent injury to itself, may have standing

"solely as the representative of its members."[2]  Int'l Union, United
Auto., Aerospace & Agric. Implement Workers of Am. v. Brock, 477 U.S.
274, 281 (1986).   "Under certain circumstances, injury to an
organization's members will satisfy Article III and allow that
organization to litigate in federal court on their behalf." Id.  For
an association to have standing to bring a claim on its members
behalf, the following three-part test must be satisfied:

> [A]n association has standing to bring suit on
> behalf of its members when: (a) its members would
> otherwise have standing to sue in their own
> right; (b) the interests it seeks to protect are
> germane to the organization's purpose: and (c)
> neither the claim asserted nor the relief
> requested requires the participation of
> individual members in the lawsuit.

Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343
(1977).  Associational standing "recognizes that the primary reason
people join an organization is often to create an effective vehicle

---

[2]   In Padilla's motion to dismiss, she asserts that the
Republican Party lacks standing because it is not "an incorporated
entity, with the right and ability to sue and be sued, at the time of
adoption of the Polling Location Resolution" and, because it is not
a recognized legal entity, it therefore could not have suffered any
injury.  Thus, Padilla alleges, the Republican Party has no standing
to bring the action.  (Doc. 10 at 11.)  It is clear at this juncture
that the Republican Party is not alleging an injury to itself but,
rather, is alleging harm only as the representative of its members.
Therefore the pertinent question is not whether the Republican Party
is legally able to suffer injury and has standing to sue on its own
behalf, but whether its members have suffered injury and whether the
Republican Party has associational standing to sue on its members
behalf.
     The cases sited by the County Clerks in their motions to dismiss
and reply do not address the correct issue.  For example, Citizens for
Los Alamos, Inc. v. Incorporated County of Los Alamos, 725 P.2d 250
(1986), a case cited by the County Clerks, addresses only whether an
association has standing to appeal a decision under a New Mexico
zoning statute.   The case is inapplicable to the issue currently
before the court; namely, when an association has properly asserted
associational standing for a section 1983 claim.

for vindicating interests that they share with others."  Brock, 477
U.S. at 290.

Regarding the first Hunt factor, that at least one of the
organization's members would have standing to bring suit on the type
of claim presented in his own right, plaintiffs must establish that:

> First, the plaintiff must have suffered an
> 'injury in fact'-an invasion of a legally
> protected interest that is both (a) concrete and
> particularized and (b) actual or imminent, not
> conjectural or hypothetical.  Second, there must
> be a causal connection between that injury and
> the challenged action of the defendant-the injury
> must be 'fairly traceable' to the defendant, and
> not the result of the independent action of some
> third party.  Finally, it must be likely, not
> merely speculative that a favorable judgment will
> redress the plaintiff's injury.

Nova Health Sys. v. Gandy 416 F.3d 1149, 1154 (10th Cir. 2005)
(internal citations omitted).

Here, the alleged injury is concrete because it emanates from an
identifiable action on a determined day.  It is particularized because
the alleged injury "affect[s] the plaintiff in a personal and
individual way."  Lujan, 504 U.S. at 560 n.1.  The individual
plaintiffs' alleged injury is that they will be "unduly burden[ed]
and/or preclud[ed] . . . from participating in the early voting stages
of the election process" and that they "will have less opportunity or
greater difficulty than members of the Democratic Party to vote early
in the upcoming election."  (Am. Compl. at 4.)  This injury became
concrete when defendants' early voting plan was adopted on January 19,
2006.  Their injury is imminent because the early voting plan for the
upcoming November 7, 2006 election could go into effect as early as
October 21, 2006.  See NMSA 1978, § 1-6-5.7 (stating that early voting

-6-

may commence "on the third Saturday prior to an election"). An injury is "fairly traceable" to a defendant when there is a "causal connection between the allegedly unlawful conduct and the alleged injury." Allen v. Wright, 468 U.S. 737, 753 (1984). In this case, a causal connection exists because the individual plaintiffs allege defendants established the early voting sites in such a manner as to cause them constitutional injury under the Equal Protection Clause. Finally, an association must show that an individual member's alleged injury is capable of favorable redress by the court. The redressability element exists when there is a substantial likelihood that the requested relief will remedy the injury suffered. Allen, 468 U.S. at 751. The redressability factor is also met because plaintiffs' amended complaint seeks an injunction of the current system and a restructuring of a future system that would give equal access to the early voting mechanism to the Republican Party.

The second Hunt factor for associational standing requires that the association plaintiff be organized for a purpose germane to the subject of its member's claims. This factor "raises an assurance that the association's litigators will themselves have a stake in the resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary." United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 555-56 (1996). Plaintiffs' amended complaint seeks a preliminary injunction "restraining Defendants from putting their early voting location plan into effect" because these early voting site plans are both intentionally discriminatory and "will have a discriminatory effect on Republican voters." (Am. Compl. at 7.) Plaintiffs' amended

-7-

complaint states that the Republican Party is "a political association registered in the state of New Mexico" and then later concludes without further elaboration that the interests the Republican Party seeks to protect are germane to the organization's purpose.  (Am. Compl. at 1, 5.)   Although this would not be sufficient at a later stage in the litigation, it is currently sufficient to allege a claim germane to the Republican Party's purpose.  See Lujan, 504 U.S. at 561 (stating that at the pleading stage, "mere allegations" may be sufficient but that at the summary judgment stage, "specific facts" would be necessary to support the elements of a claim invoking federal jurisdiction).  A registered political association would clearly seek to protect the politically-based voting rights of its members in elections.

    Finally, the third Hunt factor for associational standing mandates that the association show that neither the claim asserted, nor the relief requested, requires the participation of individual members.  As stated in the amended complaint, plaintiffs' claim is based on a violation of the Equal Protection Clause due to both intentional discrimination and discriminatory effects against members of the Republican Party.  This claim can be properly prosecuted by an association, rather than by its individual members, because it will require a broad-based view of the current early voting plan and its effect on Republican Party voters.  The remedy requested also does not require the participation of individual members of the Republican Party.   It has been stated that when the "association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to

the benefit of those members of the association actually injured."
<u>Warth v. Seldin</u>, 422 U.S. 490, 515 (1975).  As stated, plaintiffs seek
injunctive relief, both temporary to restrain the current early voting
plan, and permanent to redraw the early voting plan in a "politically
neutral manner."

Thus, a review of the three factors set out in <u>Hunt</u> shows that
plaintiffs have met their burden of alleging "general factual
allegations of injury resulting from the defendant's conduct"
sufficient to establish associational standing.  As amended, the
Republican Party's complaint properly alleges associational standing.
The County Clerks' motions to dismiss based on lack of standing are
therefore DENIED.

B.   FAILURE TO JOIN NECESSARY AND INDISPENSABLE PARTIES

The County Clerks assert that the Republican Party failed to name
the Boards of County Commissioners of Sandoval and Bernalillo Counties
as defendants in this case, and that those boards are necessary and
indispensable to resolution of this case.  (Doc. 11 at 3.)  Padilla
claims that the Attorney General of the United States is a necessary
and indispensable party because Sandoval County is subject to a
consent decree entered by a three-judge panel, which prohibits
Sandoval County from making any changes to voting practices and
procedure, including changes to polling places, without permission
from the panel or the Attorney General.  <u>Id.</u> at 1-2 (referring to
<u>United States v. Sandoval County et al.</u>, No. CIV 88-1457-SC).

This issue is governed by Federal Rule of Civil Procedure 19,
which states, in relevant part, as follows:

> A person who is subject to service of process and

> whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  If the person has not been so joined, the court shall order that the person be made a party.

Fed. R. Civ. P. 19(a).

As an initial matter, Rule 19 authorizes dismissal only when a necessary person cannot be made a party.  Id. 19(b).  The County Clerks have not alleged that this condition exists.  Accordingly, they have failed to meet their burden to demonstrate that dismissal would be proper under Rule 19.  Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr., 94 F.3d 1407, 1411 (10th Cir. 1996).

Furthermore, the County Clerks have failed to show that the boards of county commissioners are necessary parties.  Under Rule 19(a), in order to determine whether a person is a necessary party,

> [t]he court must consider (1) whether complete relief would be available to the parties already in the suit, (2) whether the absent party has an interest related to the suit which as a practical matter would be impaired, and (3) whether a party already in the suit would be subjected to a substantial risk of multiple or inconsistent obligations.

Rishell, 94 F.3d at 1411.  The County Clerks urge that the boards of county commissioners are necessary parties because it is the boards, not the County Clerks, who are authorized to establish the locations

-10-

for early voting in their respective counties.  (Doc. 11 at 3.)   In other words, complete relief cannot be afforded plaintiffs because the County Clerks have no authority to affect changes to the early voting sites, even if the court ordered them to do so.   Fed. R. Civ. P. 19(a)(1).

That might be true if plaintiffs were seeking changes regarding polling locations for the general election.  Under NMSA 1978, Section 1-3-2, it is the boards of county commissioners who are directed to establish voting sites for both the primary election and the general election.  Similarly, NMSA 1978, Section 1-3-7.1 authorizes the boards of county commissioners to establish additional polling places for "the convenience of the voters."   However, the language of that statute, along with its placement in Article 3 of the Election Code, implicitly suggests that it is applicable to polling places that will be open on election day.  By contrast, the legislature appears to have given county clerks virtually unlimited authority to establish early voting locations.   NMSA 1978, § 1-6-5.7.   The relevant statute reads as follows:

> Commencing on the third Saturday prior to an election, an early voter may vote in person on a voting system at an alternate voting location established by the county clerk.  In class A counties with more than two hundred thousand registered voters, the county clerk shall establish not less than twelve alternate voting locations as a convenience to the voters.  For class A counties with two hundred thousand registered voters or fewer, the county clerk shall establish not less than four alternate voting locations.  In non-class A counties with more than ten thousand registered voters, the county clerk shall establish at least one alternate voting location.  In non-class A counties with ten thousand registered voters or fewer, early voting shall be conducted in the

-11-

> office of the county clerk or <u>at such alternative
> locations as may be designated by the county
> clerk</u>.

<u>Id.</u> (A) (emphasis added).  This provision does not give the boards of county commissioners any authority with respect to the establishment of early voting locations.

Nevertheless, Padilla suggests that since the Board of County Commissioners of Sandoval County was involved in designating the early voting locations, that the board is a necessary party, and that the rules governing decisions of the board should apply.  (Doc. 19 at 2-3.)  The court disagrees with that view.  NMSA 1978, Section 1-6-5.7 gives the county clerks near plenary authority to designate early voting sites, possibly subject only to certain rules authorized to be enacted by the Secretary of State.  <u>See</u> NMSA 1978, § 1-6-5.6.[3] Accordingly, any effort by the Board of County Commissioners of Sandoval County to set the locations for early voting would appear to be <u>ultra vires</u>.

Since the County Clerks are charged with selecting early voting sites, their presence in this case ensures that complete relief would be available if plaintiffs prevail on the merits.  Accordingly, the court finds that the Boards of County Commissioners of Bernalillo and Sandoval Counties are not necessary parties under Rule 19(a).

Turning now to Padilla's argument that the Attorney General of the United States is a necessary party, the court finds that it would be improper under Rule 19 to proceed without the Attorney General's involvement.  In <u>United States v. Sandoval County</u>, Sandoval County

---

[3] The court could find no such rules, and Padilla suggests that none exist.  (Doc. 19 at 2.)

-12-

became subject to an order by a three-judge panel requiring compliance with a consent decree negotiated between the county and the United States.  (Doc. 11 exh. A.)  This consent decree obligated Sandoval County to take certain measures aimed at correcting Voting Rights Act violations relating to election practices affecting Native American citizens.  Id.  While there is no allegation that the issues raised in the present case have any bearing or effect on voting by Native Americans, the consent decree bound Sandoval County in extraordinarily broad terms, stating that

> no alteration of any voting qualification or prerequisite to voting or any standard, practice, or procedure with respect to voting, may be implemented by Sandoval County without prior clearance from this Court or from the Attorney General of the United States.  Such changes include, but are not limited to . . . changes in polling places within Sandoval County . . . .

(Doc. 11 exh. B at 10-11 (emphasis added).  Arguably, the relief sought by plaintiffs could be considered an alteration to a voting practice or procedure, and certainly comes close to constituting a "change[] in polling places," id., despite the Republican Party's arguments to the contrary.  (Doc. 18 at 2-4.)

Federal district courts are obligated to respect the orders of other federal courts having proper jurisdiction.  See Celotex Corp. v. Edwards, 514 U.S. 300, 313, 115 S.Ct. 1493, 1501, 131 L. Ed. 2d 403 (1995).  While plaintiffs do not expressly ask the court to overrule or otherwise contradict the order of the three-judge panel in Sandoval County, the panel issued a broadly-worded order with which any relief granted in this case with respect to Sandoval County might arguably conflict.  Although there are certain circumstances in which the court

might be able to issue a conflicting order, plaintiffs have not addressed those conditions here.  Carter v. Attorney General of the United States,782 F.2d 138, 142 n.4 (10th Cir. 1986) (noting that relief may be warranted when a prior judgment was obtained through "fraud, accident, or mistake, or when equitable relief is otherwise warranted"); see also Green v. Citigroup, Inc., 68 Fed. Appx. 934, 936 (10th Cir. June 25, 2003).

The order in Sandoval County authorizes the Attorney General of the United States to provide clearance for the various changes to voting practices and polling locations contemplated by the consent decree.  The Court finds that Padilla would be subject to a substantial risk of incurring inconsistent obligations  if the court ordered the requested relief because the United States, as a party to the consent decree, has an interest in ensuring that any changes to voting practices or polling locations comply with the order of the three-judge panel. Fed. R. Civ. P. 19(a)(2)(ii).  Should the United States find that this court's ruling conflicts with the consent decree, Padilla (whose predecessor was a defendant in her official capacity in Sandoval County) could be subject to sanctions or perhaps other punitive consequences for violating the panel order. Accordingly, the court finds that the Attorney General of the United States is a necessary party under Rule 19(a).  In order for the case to proceed against Padilla, plaintiffs need to join the Attorney General, or otherwise obtain his clearance for the requested relief as not inconsistent with the consent decree.

C.  FAILURE TO EXHAUST STATE REMEDIES AND STATUTE OF LIMITATIONS

The County Clerks' motions to dismiss assert that New Mexico

-14-

statutes require certain prerequisites be met by a complainant before a challenge can be made to "the location of polling places."  The County Clerks allege that because plaintiffs did not follow these statutorily required procedures, their complaint regarding the location of early voting sites has not been exhausted, was not brought within the applicable statute of limitations, and is therefore barred. Plaintiffs respond that the identified New Mexico statutes do not require the stated method of protestation for their particular complaint and, even if they do, because plaintiffs are alleging a violation of their constitutional equal protection rights under section 1983, they would not be required to follow the New Mexico statutes for challenges to polling locations.

The County Clerks' reliance on the New Mexico statutes regarding exhaustion and statutes of limitations for challenges to the location of polling places is misplaced.  The amended complaint brings an action in federal court alleging a violation of constitutional rights under the Equal Protection Clause pursuant to Section 1983.  The Supreme Court has held that the section 1983 remedy is an "independent federal remedy."  Bd. of Regents of the Univ. of the State of New York v. Tomanio, 446 U.S. 478, 490 (1980).  In Tomanio, the Court went on to say "[t]his court has not interpreted § 1983 to require a litigant to pursue state judicial remedies prior to commencing an action under this section."  Id. at 491.  The Court also stated that "it is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."  Id.  Thus, the Supreme Court treats section 1983 actions

-15-

wholly separate and apart from any relief that could be had under a state law scheme.

Building on the recognized independent nature of section 1983 claims, the Supreme Court specifically addressed the subject of exhaustion in section 1983 actions and held that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."[4]   Patsy v. Bd. of Regents of the State of Florida, 457 U.S. 496, 516 (1982); see also Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 519 (10th Cir. 1998) (stating that "[i]t is beyond dispute that a plaintiff need not exhaust state administrative remedies before filing suit in federal court under § 1983").

Regarding the appropriate statute of limitations, the Supreme Court further stated in Wilson v. Garcia, 471 U.S. 261, 277 (1985), that section 1983 provided a "remedy for the violation of constitutional rights."  The Court held that section 1983 claims were best characterized as "conferring a general remedy for injuries to personal rights."  Id. at 278.  Thus, a federal court should look to the state limitations period these claims.  Id.  The Court considered the relevant New Mexico limitations statute in effect at the time,

---

[4]   The County Clerks allege that the case of Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172 (1985), stands for the proposition that, for Fifth Amendment takings claims, section 1983 requires exhaustion of state remedies.  In fact, Williamson held that a state's condemnation proceedings must first deny a plaintiff just compensation before a section 1983 injury has occurred, focusing on the issue of ripeness.  Thus, a plaintiff would have to seek a determination of compensation for a taking before resort to the section 1983 federal remedy.  The case does not, therefore, stand for the broad proposition that all section 1983 claimants must first exhaust available state remedies for their claims.

NMSA 1978, Section 37-1-8, and applied its three year statute of limitations period "for an injury to the person or reputation of any person" to the section 1983 claim.

Here, plaintiffs are asserting injury to their constitutional right to equal protection under the law.  Plaintiffs bring their complaint of constitutional harm in federal court under section 1983. Pursuant to the precedent established by <u>Wilson</u>, the court must treat plaintiffs' claim as one asserting an injury to their personal rights. The New Mexico statute of limitations for an injury to an individual's personal rights is three years.  <u>See</u> NMSA 1978, § 37-1-8 (actions must be brought "for an injury to the person or reputation of any person within three years").  The alleged injury occurred January 19, 2006 when the polling location determinations were approved.  The complaint in this action was filed September 7, 2006.  This is clearly within the required statute of limitations for commencing an action based on personal injury.  The County Clerks' motions to dismiss on the basis of failure to exhaust and noncompliance with statutes of limitations are therefore DENIED.

## III.  CONCLUSION

The Republican Party's unopposed motion to file an amended complaint is GRANTED.  The County Clerks' motions to dismiss are DENIED.  Plaintiffs are directed to join the Attorney General of the United States, or otherwise obtain his clearance for the relief sought in this case.  If plaintiffs are unable to obtain this clearance or secure the appearance of counsel for the United States prior to the injunction hearing scheduled for Tuesday, October 17, 2006, the hearing and any resulting orders will apply only to Bernalillo County.

Matters regarding Sandoval County will have to be taken up at a later date, if ever.  All parties who will appear at the hearing on October 17 shall submit short trial briefs summarizing the law applicable to this case and how the submitting party intends to meet its burden to prove all necessary elements of the relevant claims or defenses.  To the maximum extent possible, the trial briefs should specifically address the law governing the claim at issue here - an equal protection challenge to early voting locations where injunctive relief is sought - rather than the general law applicable to requests for injunctive relief (i.e., merely listing irreparable harm, likelihood of success on the merits, etc., as elements of a claim for injunctive relief).   However, the parties should address how the evidence presented at the hearing will bear on satisfying the general requirements for injunctive relief.  Trial briefs shall be delivered to the court not later than 10:00 A.M. C.D.T., Monday, October 16, 2006, so that the court can review them before and during the trip to New Mexico.

IT IS SO ORDERED.

Dated this   11th  day of October 2006, at Wichita, Kansas.


                              s/ Monti Belot
                              Monti L. Belot
                              UNITED STATES DISTRICT JUDGE
                              By designation